Good morning, ladies and gentlemen. This is the time for argument in Frantz v. Hazy. We understand counsel are ready to proceed. May it please the Court. Good morning. Michael Burke on behalf of Petitioner Appellant Karl Frantz. Pursuant to this Court's en banc order, the parties have provided this Court with supplementary briefing on two issues. The first concerns how under the AEDPA and cases interpreting the AEDPA, this Court deals with a State court decision that applies a reasoning that is contrary to clearly established Federal law. The second issue concerns whether Mr. Frantz in this case was denied his Sixth Amendment right to self-representation when the trial court excluded him from an in-chambers conference in which they considered a request from the jury to hear additional evidence. The parties are in substantial agreement on the first issue presented by this Court. Was the last reasoned decision of the Arizona Court of Appeals applied reasoning that was contrary to clearly established Federal law? The parties agree that in this case there is a constitutional violation of his constitutional claim, and that this Court may grant him relief on that claim only if its de novo review leaves it convinced that there is a constitutional violation in this case. The parties differ, we part company, on the question of whether there is a constitutional violation in this case. And with the Court's permission, I would like to delve directly into that core issue and entertain any other questions at EDPA as they may come up. The constitutional violation, to the extent there might be one, would be the violation of the Freder right? Yes, Your Honor. Yes. And most specifically, his exclusion, the Petitioner's exclusion from the in-chambers conference after the jury was deliberating. If you can, while you're covering that, address that jurors are only entitled to evidence that's admitted during the trial. It clearly was not, it's undisputed it was not admitted. So why wouldn't, why, you know, why wouldn't the answer there be, well, it wasn't admitted into evidence, no, the jury can't see it, end of story? Your Honor, I believe it would be, in this particular case, there was no objection from the prosecution into admitting the evidence. But still jurors are only entitled to admissible evidence, and courts aren't required to take, you know, accept stipulations. So how do you, you know, I mean, courts don't do illegal things just because lawyers want them to. Well, admission of the 9-1-1 tape in this case was in no way an illegal thing. In fact, the judge's thoughts about the 9-1-1 tape sort of evolved over the course of the trial. His initial reaction was, this isn't admissible. And near the end of the trial, he would, could then become convinced that it was admissible. But the bottom line is it wasn't admitted, though. So for deliberations, it would be like if the jury said, well, you know, can we go out to the scene? Well, no, that's not part of the evidence. Can we, you know, can we have an encyclopedia? No. You know, can we have Internet access? No. But in this situation, Your Honor, I believe that the parties could have moved to admit the evidence. I think, I mean, this is a very good question Judge Callahan is asking. As a matter of State law, is the trial judge authorized, after the jury's entitled to deliberate, does the court have authority to admit additional evidence, assuming there's no objection? Without reopening the evidence. Or with reopening. Can he reopen the, can he say, come back, we're going to reopen the trial, more evidence, or can, can, does he have authority to, to send in more evidence? Your Honor, it's my understanding that the, the trial judge has the discretion to reopen the trial, and to bring the jury back in, and to admit the evidence. Your understanding based on what? On my, on my understanding of the Arizona Rules of Criminal Procedure and the Rules of Evidence, but I cannot cite to this Court. You don't want my asking whether you're in a position to know. I don't, I mean, are you in, I don't know your, I don't know whether you practice on a Federal court or, I'm perfectly willing to accept your presentation as to what the State courts do, if you have substantial. And I don't want to mislead the Court to say that I do have that, and I, and I, I would be more than happy to provide supplemental briefing on that specific issue. It would be unusual, though, wouldn't it? To bring the jury back in? Not, I, I don't know, Your Honor. I don't honestly know the answer to that. I think, though, it certainly would, juries are brought in all the time. In fact, I don't know. Well, but listen. If you put in new evidence, that's not something that either side has argued. And arguments are already done. So if you bring in new evidence, then the parties haven't argued it. And then you reopen argument. And, you know, I mean, I can tell you, having been in State courts for 20 years, it is unusual to reopen a case after jurors begin deliberation. Well, then, Your Honor, let me, let me shift focus then, because this brings up, I think, a very important issue. What the Court is asking now is, what was the harm to Mr. Frantz because, when he was excluded, because the judge couldn't have provided this information anyway? Actually, the question there is whether this is a critical conference where a lawyer would have to be present. If a party were presented by a lawyer, it would be an item to have a lawyer present to argue. If there's no, nothing a lawyer could argue because the judge has no authority to do it, then it doesn't matter whether the party's lawyer, be it his counsel himself, acting as a lawyer, is present or absent. With regard to whether it is a critical stage, Your Honor, I think it is clear under Arizona law and under Federal law that when a jury submits a question to the Court during deliberations, that counsel must be present to address their position with regard to the question, regardless of what the ultimate outcome is. And I can cite this Court to case law in that situation, State v. Mata from the Arizona Supreme Court, and from the Federal Court, United States v. Rogers, cited about three weeks before Frederick. And so both of those would require the Court to bring in counsel to allow them to discuss the jury's question. Now, what could have been the State court opinion and the Federal district court opinion are both somewhat confusing, because they characterize this as a bench conference and say it was on the third day of trial. It actually was during deliberations and it wasn't at the bench, it was in chambers. Is that right? My understanding, the transcript says that it is an in-chambers conference. Yes. And it wasn't during the trial. It was during deliberations. No. The jury had already retired to deliberate and had submitted the questions after they had been instructed and sent in to the jury. Mr. Burke, it occurs to me this is not the usual kind of Feretta error. Here the judge is not trying to exclude the defendant. He's trying to elicit his point of view. And the lawyer purports to say this is what Mr. France wants. This is not what I, Mr. Lamb, believe. This is what Mr. France wants. So even if it's an error, it's not the usual kind of Feretta error, is it? Absolutely, Your Honor. It's the rare occasion. Most Feretta cases come up in the circumstance when the defendant is claiming that the trial court unreasonably denied him his right to represent himself under Feretta. So there are not many cases out there on this particular issue. And in this instance, our position is that this is not a Feretta error at all. It's kind of a messenger error. The messenger boy got the message wrong. There's some kind of disconnect between the, you know, the lip and the cup. But it wasn't where the judge was saying I'm not going to let France have his say. He thought he was getting France's say. But in my opinion or not, Your Honor, that is exactly a Feretta violation, because we don't have a messenger. There should be no messenger. Mr. France should have been brought into that room. Where was he at the time? Was he back in jail? No, Your Honor. The record says that he was in a holding cell. And so he was at the courthouse. And I'm not familiar with Pima County's courtrooms, but most have holding cells adjacent to the courtroom. And so there's an issue, which you're assuming, because the State has agreed about that, too, and that is whether there, a promissory rule does not apply here. And that comes from the footnote in the cast call, right? Yes, Your Honor. But is that dicta? Is there a Supreme Court law after it that incorporates it? Your Honor, I believe that's an excellent question. And I would say that it's not dicta, because what the very case that would say that there is structural error that requires reversal is Feretta itself, which was decided after Chapman v. Cutler. And in that case, as soon as the court found a Feretta violation, then they automatically reversed the defendant's conviction. So you think that footnote was simply reciting what was already decided? Cuts have many, many cases subsequent to McCaskill, and we cite those, I believe, in footnote 9 of our brief. I don't believe that there is any. I don't – I would be surprised. It's at the very least highly reasoned dicta, because they don't just make a statement. They give a reason, but Justice O'Connor actually gives us information. Yes, Your Honor. Mr. Burke, is it basically your position that any time that something happens in the courtroom, once the defendant has exercised – has decided he wants to represent himself, that – and he is not there and not speaking for himself, that it's structural error? No, Your Honor. I would not go so far as to say when anything happens in the courtroom and the defendant is not there, there is a Feretta error. Let me say, if there is a Feretta error, there is structural error. Now, I believe that there could be circumstances. For example, if – and the Feretta cases talk about the assistance of advisory counsel in handling day-to-day matters of court. The jurors would like to break for lunch at 11.30 instead of 12. It would – we would be hard-pressed to say that that was a violation of Mr. Francis' Feretta rights, because it really is not a matter of importance. Do you think the test is whether or not, had the party been represented by a lawyer, the lawyer would have been required to be present? So it's a decision the judge can do without consulting the lawyers, and it's not. Whereas, if it's a kind of decision where the lawyers have to be present, in this case, he is the lawyer. I believe that's an – that it would be an appropriate way to analyze it, Your Honor, yes. And that would be the distinction. When we talk about matters of court. The judge decides we'll take lunch. He doesn't have to have a bench conference to do that. He can decide on his own. He doesn't have to check with counsel. That would be my understanding, yes. Then don't you think that if the request came in from the jury to have the tape played to the judge, the judge could say that would mean rereading some – or putting some evidence in, allowing the parties to argue, considering instructions, and having perhaps a curative instruction, you've got to start all over again, considering this case based on this new evidence, and I'm just not going to do it. It's too late in the day to deny it. Could he make that decision? The judge certainly could make that decision after consulting the lawyers. So then he wouldn't have to call the attorneys in to make that decision. No, Judge Beyer, I disagree with you on that point. He would need to at least allow the counseled parties to make their voice known on a matter of importance. Counsel, doesn't that make – counsel, doesn't that make a difference? Does it make a difference in this case if you look at the history of the – of Franz's attempts to introduce the 9-11 tape? Apparently, he wanted, during the trial, to have the 9-11 tape introduced because it was exculpatory of him, in part because it identified him in a way that was inconsistent with his – the way it truly looked. So, I mean, there's a history here. He tried to get it admitted, and the judge seemed to delay or didn't ever really say, no, I'm not going to have the tape. And then – which obviously has had to – I mean, how else would the jury know to send a note in asking for the tape, except that there was some discussion of it during the course of the trial. They had kept it away from the jury entirely. They wouldn't even know to ask for the 9-11 tape. So given the history of Mr. Franz's request to have this tape because he thought it would be helpful to his case, does it make it more critical that he be there to make sure that his wishes were being conveyed to the judge, who was open to letting it in, rather than going through a middleman who, on this record, looks like he said something contradictory to what Franz wanted? Well, and on your last point, Your Honor, that's one of the core problems we have here, and one of the reasons why trying to conduct a harmless error analysis in the forensic context is next to impossible. We don't know what occurred between Mr. Franz and his advisory counsel. With regard to the point that he had throughout the trial tried to get the evidence in, that's true. He, in fact, at one point advisory counsel stated that Mr. Franz was fixated on this. Now, I would disagree that he wanted it admitted for purposes of exculpatory evidence. He wanted to admit it for purposes of impeaching the key witness against him, her credibility as a witness. Yeah, but that's exculpatory, if you impeach the key witness. That's what I'm talking about. Well, if the Court had held a hearing on this, because Mr. Franz says that's not what he said. The lawyer said he told me he didn't want it in. All right. So, if the Court had held a hearing on that issue, and after a hearing had determined that Mr. said, I've heard what Mr. Franz said, I've heard what the lawyer said, and all of that, and I've determined that I believe this, I don't believe that, and I've determined that Mr. Franz told, you know, decided to sit in his cell, told the advisory counsel, come in, go in and tell the judge I don't want it in evidence. If the Court had made that determination, would you agree at that point you'd have a, you know, a steeper hill to climb here? No, Your Honor. Mr. Franz himself had the right to be prisoner. He was his own judge. All right. But if he said, I don't want to, I want to sit in my cell, I want you to go tell the judge I don't want that, you know, I don't want that admitted, then does the judge have to go drag him out of his holding cell, make him sit in chambers? No. Under Ferretta, the Court in footnote 46, the Court says that a court may appoint an advisory counsel to assist a pro se. And if the Court were convinced after a hearing that Mr. Franz had, you know, that's what he had said and that's what he had wanted his counsel to do. And I'm sorry, I misunderstood that part. Yes, Your Honor. I think if this were a case. All right. Because he didn't say that right now. But what I'm saying is if the Court had a hearing and said this is what I believe, you know, after hearing everything, I believe you told your lawyer to come in and tell me that you didn't want it in. But I would say, it seems to me, Your Honor, that that's still really a harmless error review here. Now, I suppose if there was clear waiver by this effect. No, it's a factual determination. This is what I believe happened. You told your lawyer you wanted you didn't want it in, and that's what I, you know, that's what I believe after hearing what everyone has to say. Right. That is correct. But that also puts Mr. Franz in the position of being brought into an evidentiary hearing where he's going against the person that was supposedly appointed to advise him and to assist him. And if the Court finds in favor of the advisory counsel, Mr. Franz has no remedy. He can't seek ineffective assistance of counsel. Well, are you then taking the position that any waiver we know from McCaskill that the defendant who presented himself can waive certain aspects of self-representation? McCaskill, the lawyer, was allowed to conduct some voir dire, some cross-examination, and, you know, some other things. So you can say, you go ahead and do it. There's no doubt about that. Is your position that spot waivers like that have to be in court on the record? That the lawyer had gone to him in his cell and said, look, you need to come to court to deal with this matter. And McCaskill said, no, I don't feel like it. And the lawyer said, but you understand the judge is giving you a chance to walk into court and make your own case. And McCaskill says, no, no, I think you can handle this for me. That would not be valid because it didn't happen in court. Is that your position? It's a hard position to take. And I run up against the concreteness of the Pareto right. I believe in that situation, were it on the record contemporaneous with the in-chambers conference, that Mr. Lamb had said, I have been in to speak with Mr. Franz and he does not want to come in there, then, yes, we would have a much steeper hill to climb. Would that need to be made on the record? Essentially, I do not, I will not, I cannot take the position here that they would have to drag Mr. Franz from his cell. I don't believe that would be required. If there was an adequate record, that's certainly not this case at all. But why, how do we know that? Why shouldn't there be, if we agree with you on everything else, why shouldn't there be an evidentiary hearing in the district court to determine whether or not there was a Pareto violation, that is, whether there was a knowing, voluntary waiver of his opportunity to come in, either because he said, gave instructions or for some other reason? Why isn't that the right answer? Because, Your Honor, in this case, the trial judge, there's nothing in the record at all to suggest that the trial judge ever said to advisory counsel, go in. No, but he comes back and says he doesn't want it. Now, whether he did that based on his past conduct in the trial or whether he based it on instructions, we don't know. Perhaps there was no disconnect between the lip and the mouth, the lip and the cup. Perhaps there was a communication of saying, yes, I don't want it. If that's true, then it seems to me that you've got a tough, tough battle. If it's not true, if he says, no, we had no such conversation, then I think your Pareto structural error has a little more force. But in fact, if he says to his advisory counsel, go up and tell the judge, I don't want this, how could there be a Pareto violation? Well, Your Honor, my position is the Pareto violation is the trial court's refusal to even consider Mr. Fronsen, and there's nothing on the record at all to suggest that. He wasn't given a choice, in your view. He wasn't told, you can tell me to be a messenger or you can come into court. That's your brief, right? Precisely, Your Honor. Even his own statements were somewhat contradictory. I mean, his affidavit said that the attorney didn't talk to him, but his actual petition said he didn't agree to play all of it. He didn't tell him they were going to play all of it. He told me they were only going to play some of it. So even his own submission suggested there may have been some conversation. And, Your Honor, there is inconsistencies in Mr. Fronsen's plea, and I would agree with that. The fact of the matter is Mr. Fronsen should never have been put in the position that he would have to be making this argument. He should have been brought in.  I mean, I never gave people advisory counsel exactly for this reason. It's just like, if you want to represent yourself, you have the right to go down in flames any way you want. But he wanted advisory counsel, right? He did not object to advisory counsel, Your Honor. Right. And so he wants to use them the way that he wants to use them, and then he wants to later claim, well, you know, now that it didn't work out so well, well, I should have been in there, you know. I adamantly disagree with that, Your Honor. Mr. Frons agreed to have advisory counsel, however, the judge said, I'm going to appoint advisory counsel whether you want it or not. And if you look at the record in this case, at no time, at no time during the trial did Mr. Frons acquiesce in participation by his counsel. There were a series, of course, of bench conferences from which Mr. Frons was excluded. But he there was placed in a very difficult situation because he was shackled for reasons that are completely beyond anything in this record. So he had to make the choice there. But otherwise, he cross-examined witnesses, he argued points of law to the court, he made his closing argument. And so this is not a case where Mr. Frons is trying to use the right to advisory counsel as both a sword and a shield. And so with that said, if with the Court's permission, I would like to reserve the remainder of my time for rebuttal. Thank you. You may. My name is Randall Howe, representing respondents in this matter. I'll be happy to address any questions this Court may have on the first issue. But I concur with Petitioner's counsel that we substantially agree that this Court can make an independent determination as to whether there was such a member of the violations there.  Let me take you right to the point that the co-counsel that I've been sort of, you know, asking him to address. You know, obviously, jury questions are really important in terms of when the jury, you know, is asking certain questions. Why, you know, why isn't that a critical stage of the proceedings in terms of, because depending on how the Court resolves it, I mean, the Court's interfacing, meaning the Court, the judge is interfacing directly with the jurors and jurors place a lot of weight on what the Court says. So, you know, why, why shouldn't, you know, why isn't that a critical stage of the proceedings? Your Honor, in any given case, it may indeed be a critical phase. But what we have to remember here is the factual situation that we're dealing with here. What his defense at trial was, was that I went in to beg for a hamburger and a Coke and got into an altercation with the Cook. He fully admits that he was there, but he claims there was a misunderstanding. But that's going to the merits of the issue. And so therefore, it's really a harmless error argument. And, B, it's not quite accurate, because the reason he wanted to use this was in order to impeach her overall memory or representation. He was trying to say, as I understand it, well, she was wrong about this, or she could have been wrong about other things, too, which is not an irrational position. Your Honor, I would beg to differ on both points. And I'll address your second point first. All he said at the trial was that he wanted to have the 911 tape omitted to show that the victim's testimony was totally arbitrary. He gave no explanation for that myth. But what we do know for sure is what he argued in his PCR. And as I pointed out in the response reply brief in the PCR, he states quite simply that the omission of this evidence goes to show that he is not guilty because the victim said he had blonde hair when he actually had salt and pepper hair. There is no indication that Mr. Franz wanted to use that 911 tape as to go and impeach him. He wanted to use that to show that he was misidentified. It doesn't matter what he wanted to use it for, because at this point we are past the point where he can use it at all. There's not going to be any more summation. The court might let it in or might not let it in. But there's nothing that whatever purposes the defendant might have had at an early stage of the trial would not be served. The decision at this point is given that the jury thinks this is an important piece of evidence for them to consider, does the defendant get a chance to have his lawyer present to argue whether the court should send it in or not send it in? It's a simple matter as that. I just have a correction on that, because in answer to Judge Brisson's first question about homicidal, we all agree here that that Sixth Amendment error is an error that is not subject to homicidal analysis. But when you look at the United States Supreme Court's analysis in McCaskill v. Wiggins, every option of advisory counsel does not rise to the level of the denial of the Sixth Amendment right. So we have to look at the facts of the situation to determine if the ---- Because there hasn't been an evidentiary hearing to see whether the representation that he wasn't asked is correct. It was represented that he doesn't want it. He says, I never said that, and I never authorized my lawyer to say it. And so how can we make any determination at all about that? There are two answers to that, Your Honor, and I'll start with the bottom line. The facts of this case about exactly what was said are uncertain. Because they are uncertain, we're now being happy with a remand to the district court to determine what the facts are. But our first argument is that it is clear that advisory counsel did go to the defendant in the holding cell and not ---- Well, you have a strong inference that he got some information and came back and said he doesn't want it in. But then you also, right now, we're faced with the defendant or appellant claiming that or petitioner that he said, I didn't tell him that. So you're saying you wouldn't be unhappy. But, I mean, and that was the question that I was asking your co-counsel. If the court had held an evidentiary hearing, heard what Mr. France said, also heard what his advisory counsel said, and then said, you know what, Mr. France, based on all the circumstances that I saw, remembering seeing him go out, coming back in, and then this was what it said, and also I've gone through all your positions that you had during the trial and the strategy that you all took on. You know, I don't believe you when you say right now that that's not what you told him. I don't believe you, and I believe that your lawyer said what you meant. And then, at the end of the day, you know, wouldn't, then the court could say, well, I think that you can use an advisory counsel, and it was your choice to use your advisory counsel to come in as a messenger and give me that. So there's no, you know, there isn't – there's no structural error. I mean, that – I mean, and I believe that counsel would have a harder time, counsel for Mr. France would have a harder time attacking that, and I think on some level he's conceding that. But we haven't had an evidentiary hearing here. And as I said, Your Honor, if this court remains confused about the fact that an evidentiary hearing wouldn't be appropriate, I would remind the court – I guess the question I have is, what would be the point of an evidentiary hearing? I don't understand. If we decide that this is important enough where his view, you know, the question of whether he appointed – whether the counsel communicated correctly to the court matters, so this is the kind of conference where having his lawyer present matters. The point is he didn't have his lawyer present. He had some stranger there babbling, speaking, but what McCaskill says quite clearly, the right for rhetoric encompasses, and I'm reading here from 465 U.S. 174, the right to address the court and the jury at appropriate points in the trial, which means you don't make the argument through this other guy. You have a right to make the argument in your own way to the court in your own words. Your Honor, this is where I think Petitioner has misdescribed what his Sixth Amendment right is. He has no Sixth Amendment right to be in the courtroom as an attorney within the system. Go to page 178, where Justice O'Connor speaks about – talks about the right not to have somebody speak instead. What do you make of those things? The point being – the point is, Your Honor, is that as long as the defendant's views are communicated to the trial court, he's just going to have to be physically present. I see that, that what the Supreme Court said in McCaskill is he has a right to address the court and the jury at appropriate points in the trial. And Respondent's position is that that is what is happening. If you use a telephone, if you use an intermediary, what is – a defendant is denied the Sixth Amendment right if he is not allowed to communicate his views to the trial court. So addressing your views is – you know, a defendant addresses the jury if he has to sit there mute and then he can tell his lawyer, this is a summation I want you to make to the jury. And so long as the lawyer accurately reflects the substance of what – of what the defendant wants said to the jury, then he's got his further right because he's addressed the jury using this other person. That's what you understand to be – what do you make of the passage on page 178 of McCaskill where it talks about the right to speak, about not having the counsel interfere with the right by speaking instead of the defendant on any matter of importance? If the defendant said to his advanced counsel in the holding cell, I want that 9-1-1 tape omitted, and the counsel returns to the trial court and says, he says he doesn't want it omitted, if that were the actual case, then Respondent's would concede that there – that there  Now, in the last reasoned opinion of the State Court of Appeals counsel, it says that even if we assume that advisory counsel did not relate to Petitioner the jury's request, and if we accept Petitioner's premise that his presence would have resulted in the tapes being played to the jury, we fail to see how that would have changed the verdict. So the decision of the State court was premised on the fact that he didn't know that there had been a request, and he also, as I understand it, didn't know that the State had changed its mind, had said it didn't have any objection to it being heard. I would respectfully disagree with your premise, Your Honor. The State trial court made a finding of fact that counsel did go and discuss the matter with Mr. Frantz. What the State Court of Appeals did was it was agnostic on what the facts were. The appellate court made no such findings. What do we do with that, that the State appeals court got it wrong? I mean, in terms of the facts, didn't it? What the State court of appeals held is whatever the facts are, it didn't matter because the error was harmless. The Court of Appeals never made any factual determination. But did you say that the trial court made a factual finding? Yes. And it's cited on page 2 and 3 of my supplemental brief. I'm sorry I left it at that. Where is it in the records? It's in the old court of appeals, Your Honor. I find it in the full brief here. I see. He said advisory counsel consulted with the petition. Yes. It's in the supplemental access to the record there at 208. I have a different question that harkens back to something that was asked of opposing counsel, and that is your understanding of State law as to whether it would have been permissible for the State trial court to have played the 9-1-1 tape at that stage in the proceeding. Could the trial have been reopened for that purpose under any theoretical scenario? Judge Callahan is correct that at that stage there is no more evidence to be admitted under State law. It would be unusual. Yes, it would. It would be highly unusual. It would be highly unusual. But in this case, the judge certainly indicated his will. After the prosecutor said, I have no objection to admitting the tape, asking the advisory counsel to go consult or whatever and get his position, that indicates that he was willing to let it in, as unusual as that may be, because the jury wanted it. State law, I'm unable at this moment to cite appropriate rules, but the State court certainly has a authority to do that. The trial judge has the discretion to have admitted it at that time and to have given an appropriate instruction at that time to the jury, correct? Yes, Your Honor. So your answer to Judge Graber's question is yes? Yes. It's always best to say yes when, you know, a yes will do. You know, it's always we can move on to something else. But thank you, Judge Wardlaw, for clarifying that, because I was getting lost here. So the judge could have done it, particularly could have done it if both sides agreed, and particularly could have done it in the criminal case if the prosecution agreed, because, hey, if he's wrong and there's an acquittal, there's no appeal, right? So there's some chance that he could have, if both sides had come in, if Mr. Frantz had come in and said, Judge, you know, I've always thought this tape was important. I don't know why I let my lawyer talk me out of it. The jury wants it. I think it's really important. And I really urge you to please, please, please, please, please, double penny, please, sugar on top, let the jury hear it. And the judge might have said, well, if the prosecution doesn't object and you want it and the jury wants it, who am I to stand in the way? It could have happened that way, right? It certainly could have. Can I ask you a further question on that? Surely. Have you tried cases before the jury? I'm sorry. You know, I'm just a poor appellate attorney. I've never tried cases. Well, I've presided over trials. And in my experience, when a jury is deliberating and it sends out a note, well, in the Libby case, the jury sends out a note and the whole world wants to know, what is the jury asking? What do they want to think about? Why are they asking for that? How can I best help the judge shape his response to whatever that is to get them to lean into my favor? To me, that is an extremely critical stage of the proceedings because there you know the jury is asking for something. It's important to the jury. The jury might be misguided, it might not really be important, it might be irrelevant, but to them it's important. And usually, if that ever happened in a trial I was presiding over, we'd have lawyers, you know, running from all over the city to get back to hear what the jury is asking and to inform the judge how to respond. There are two answers to that, Joanna. The first answer is, as we've set forth in the brief, that whether or not this was a critical stage, respondents believe that the state of the record shows that Mr. French was insulted. Respondents also argue that given the nature of Mr. French's defense, which was a defense of misunderstanding rather than a defense of misidentification, that in this case, this particular jury question is... If they don't acquit me on this other ground, I don't want it. If they don't acquit me on the ground that I argued to the jury, you know, I don't think they should be allowed to go there. That's probably what you would have said, right? Aren't you hurt by the fact that here one side had counsel present? I mean, the state was heard. Now, let's say, for example, this had been a case where a defendant is represented by counsel. Yes. Not a Faretta case at all. You know, Faretta is a case lawyers and judges love to hate, but imagine the more usual case. Defendant is represented by counsel, and the judge says, we have this note from the jury, the jury wants to know whether or not they could have this tape. And, you know, the defense lawyer is sort of far away, but the prosecutor is just down the hall, so I'm going to just call the prosecutor to tell me what he thinks. Is that a problem, you think? To have the court make a decision with only one side represented? If that were the case, Your Honor, we would have to agree what the one. But that is the case, because the one side had its lawyer present, the prosecution had its lawyer present, whereas defendant didn't have its lawyer present. Correct, Your Honor. Let's talk about it. Who was Mr. France's lawyer at trial? Who was he represented by at trial? He was representing himself. Okay. So himself is hereinafter known as his lawyer, right? Was himself present in court when the defense, when the prosecution, when the court considered the jury note? His view. When yes or no will do, I will ask you to answer yes or no. Was himself present before the court when the jury note was considered? Yes. Or no? He physically wasn't present. Yes or no? No, Your Honor. Okay. Now, was the State's lawyer present in court? Yes, Your Honor. Why isn't that the end of the case? Because that is not his, that is not his Sixth Amendment right to physically be in the courtroom. Now, have you ever heard of a case where a defendant is represented by counsel, and instead of having his counsel present, the judge brings in some guy from the court and says, here, why don't you speak for the defendant? Or gets a lawyer from another case to come in and say, look, we don't really need a defense lawyer here. You know, all defense lawyers are alike. You speak for the defendant here. That wouldn't do, would it? No, and that's not what happened here, Your Honor. It's very close to what happened. No, it is not. Well, how is it different? The advisory counsel under the ‑‑ I'll be fair and present both sides. Under the Respondent's views, the advisory counsel went to the holding cell, obtained from Mr. Frantz his view on the ‑‑ Let's sit on that. I mean, the State court of appeals said that, as a matter of State procedures, I understand it, and certainly as it would be true of our procedure, that when ‑‑  that the case had to be decided on the basis of his factual review or the petitioner had put in an affidavit saying that didn't happen, that the case had to be decided on the basis of his factual allocations. And that's why they didn't listen to ‑‑ didn't take the State court's findings as pertinent. So it seems to me you just cannot stand on the basis that there was a finding that ‑‑ or a legitimate finding that this is what happened. Well, Your Honor, other than having the factual finding of the trial judge who was present, then there is no further finding. And if this court, if you do not find that this court can rely on that factual finding, then this court must remain this case for an evidentiary hearing. And the evidentiary hearing would be on the question, if I understand your position correctly, the evidentiary hearing would be on the question of whether the Faretto right was waived for the purpose of that response to the jury. No. You're right. Your answer to that is no, because, in fact, the State has never argued waiver in any of these proceedings. Correct? But the State's position has been is that the messenger was an adequate substitute. Yes. You've never argued waiver. Right. So I don't know why we would have an evidentiary hearing on the question of waiver. No. What we would have an evidentiary hearing on is did advisory council actually go to the holding cell and ask Mr. Franz what his view was on the jury question. And that would determine whether Mr. Franz's Sixth Amendment rights were respected or violated. It's Respondent's view that all the Sixth Amendment requires is that counsels or employment, that the defendant's views when he's representing himself be communicated to the trial judge, and that is all that the Sixth Amendment requires. Is that true of every point in the trial where defendants are allowed to speak and the court say, you know, yes, you can represent yourself, but you can never open your mouth in court? The way you're going to represent yourself is you're going to whisper in the ear of this lawyer, and don't say a thing. I'm not your lawyer. Good. And whenever you feel like talking, you're going to have to bend over, whisper into the ear of your lawyer, and then your lawyer will stand up and speak to me, speak to the jury. If you want the witness questioned, you're going to have to whisper in your lawyer's ear. The lawyer will phrase the questions for you and ask them in court. If you're not happy with it, you're going to have to whisper in his ear again. You think that that's okay, that that would be a realization of the federal right? Absolutely not, Your Honor, because under McCaskill v. Wiggins, we have two parts of the Sixth Amendment right. When you're dealing in front of the jury, the defendant has to be seen to be representing himself. In front of the jury, you would be absolutely correct. I understand. He is seen. He's seen whispering in his lawyer's ear. You know, obviously the lawyer, the jury understands that everything the lawyer says is directed by defense counsel. Well, what if he whispers in the lawyer's ear, and then the lawyer communicates with God? I apologize, Your Honor, I didn't catch the second part of your question. I withdraw my question. Let me ask a slightly different question. We focused on the fact of the 9-11 tape admission, but more went on in this colloquy than just that. That's the start of it. And there's a proposed instruction given to the jury. Now, there's no dispute that the advisory counsel did not consult with the defendant about the proposed instruction, right? No, Your Honor. There's no indication in any of the proceedings that that's the substance of his objection, Mr. LaPlante. He says, they start off, the court says the State would agree to play the 9-11, and he said yes, if that's what the defendant wanted to do, advisory counsel, if he doesn't want to do it, okay. And then we go on for a couple more pages on the framing of the instruction. Now, why wasn't he entitled to be there for the framing of the instruction? Your Honor, he does not make any. I'm not going to argue that. I'm just asking you why, as we're looking at the global picture here, more goes on at this conference than just the answer to the question. I know they're not arguing this, but, I mean, in terms of a forerunner, right, that means a little more to me than just say, here's the communication, the answer, because there's more that goes on. He's hearing the judge. Your Honor, Respondents argue that this is not a critical stage. So the jury instruction on that. But doesn't this point out why physical presence is, in fact, necessary? You can't really do without it, because things happen in court. Things move. There's a response from the other side. One of the other judges asked you this question. I mean, that, you know, he didn't know that the State consented, which is an important piece of the puzzle. Not only do you have a jury question, but you also have a concession by the prosecution. It might cause the defendant to be wary. It might cause the defendant to jump. These are the kind of decisions you make at the scene of the battle. You can't really instruct somebody to do these things for you by remote control. May I answer, Your Honor, my question? The defendant has a right not to have a judge or counsel interfere with his representation. So the fact that other things, you know, may come up, that doesn't mean that a judge or counsel has interfered with his right. Thank you very much. Unlike Mr. Howe, I have tried a case, only one, and I lost. And I then, after that, went into ----   If you have any questions, feel free to ask. During Mr. Howe's argument ---- Can I step back for a minute to the question we haven't talked about at all, that is the EDPA issue. And just ask whether the answer to the question that we've asked you that both of you agree on have any implications for our case law about the instance in which the State court hasn't given any reasoning. For example, Himes and Delgado. Oh, Delgado and that line of cases. I don't believe so, Your Honor, and this is why. This would be my ---- let me first say that there's certainly dispute among the circuits as to how that should be handled. The First and Third Circuits would say, and that's in the situation you're talking about, there would be no adjudication that would be deferent, that would be entitled to deference. With that said, and the Ninth Circuit law is different. I don't believe that there is a conflict, and this is why. In our situation, there's a presumption in all cases that the trial courts, the State courts, know the law and they apply it correctly. When you have a postcard that stands denied, that presumption arguably would apply, that the State court knew what it was doing and it just chose not to set forth its analysis. In a case such as this one, the State's own decision has essentially rebutted that presumption, because they have applied law contrary to clearly established law. And then under that situation, it would be required under Williams v. Taylor and under Early v. Packer to have the court review it de novo. That would be my response to that. So don't we then reward State habeas courts to not give any reasoning whatsoever? If they give no reasoning, then we only look at the result? I agree, Your Honor. There is a bit of a perverse incentive there. Well, in that case, usually, when there's like a postcard analysis from the court of appeals or the Supreme Court, and under our Ninth Circuit law, what we do is we look to the last recent State court decision. So you look at the trial court and the reasons that the trial court gave, right? So it's not really that kind of an incentive. But in the absence of any analysis, I think that the crimes are denied. In my experience, it's often trial courts that say denied. Of course, I only have one trial myself. Counsel, I have a question as to the state of the record. My notes indicate that the defendant originally sought to admit the transcript of the 9-11 tape, and then he withdrew that motion. Is that an accurate statement of what the record would show? That is an accurate statement, Your Honor. And as we put forth in our brief, however, the defendant withdrew his request to admit the transcript immediately following a bench conference from which he was excluded. And Mr. Lam, the advisory counsel, stated, I'm going to go try to convince him that he should just drop this one because you're letting in bank records, totally unrelated evidence. And the record shows that Mr. Lam returned. And in less than a minute, comes back to the court and says, I've been successful. Or he says he's waiving his request to admit that. He didn't say, I've been successful, did he? Well, that was in he did say that in another instance when he said he was going to try to convince Mr. Frantz not to make an opening statement. And then he returned to the court and said, I've been successful or I've been persuasive in my efforts. Mr. Burke, I want to make sure I'm clear. If the judge had answered the note without consulting either side, we would review for harmless error, right? That would be a due process, Your Honor, if this Court would review for harmless error. And if the judge in or if both sides had lawyers, but the judge only conferred with the prosecutor, we would review that for harmless error? I believe so. That would, again, be a due process. But if he's representing himself, we review it, we apply structural error. Yes, Your Honor. What's this? What's the reason for that? As I understand the Court's reasoning in McCaskill, that because the exercise of the right of self-representation usually works to the defendant's disadvantage, denial of that right is not something that can be viewed from a harmless error standard. It's just it doesn't fit. It's analytically impossible, because usually defendants don't do themselves any favors. Are you sure about the second case? If he did not, if he did not confer with anybody. He's supposed to have both lawyers present, and the judge calls only one side. He's entitled to have his lawyer present, but the judge just doesn't bother to. You don't, you think that's just harmless error? If it's a critical stage and it's a denial of right to counsel, i.e., counsel is not there, isn't that structural error? Your Honor, that might be. I don't want him to speak. I certainly don't want him to speak on that point. I will certainly. You think Mr. Bloom was very clear about phrasing the question. I mean, very clear about phrasing the question. So I want to make sure that you understood it. And I want to give a consolidated answer to that. In the honest answer. Your time might not be to represent my counsel here. Well, the honest answer is, Judge Zuckerman, I'm not sure on the second part of your question. I would have thought so, but I'm often incorrect on some of those things. So I will defer to greater minds. Your point is that when you've got a defendant representing himself, that that defendant should be accorded the same respect, the same consideration as you would if the defendant had been represented by an attorney, the same respect that you give the attorney. He's a lawyer and he's got a right to be present at all stages of the proceedings. Let's see, what is that right? And he didn't do that. And so that's why you have structural error. That is our argument, Your Honor. Yes. Yes. Mr. Burke, may I ask you a question? How do we handle the finding of the trial court that there was indeed consultation and the defendant said he didn't want the tape played? Isn't that a finding of fact by the last reasoned state court and therefore entitled to 2254 D2 deference? Or E1 deference, perhaps. But I disagree with the State that it is a factual finding by the court, because it certainly isn't a factual finding that was reached after a full opportunity to have the ---- But you don't care. It is a factual finding. Your point is irrelevant. He's entitled to come into court and say it himself. It doesn't matter if he told this stranger, walk into court, he doesn't tell whether it was his mother or it was his priest who happened to be present and said here you go to court. He's entitled to be face-to-face with the judge and make his own case in his own way. But I agree that. But I can agree to both, because I don't think that was a factual finding regardless of what he did. He put in an affidavit on appeal, as I understand it, that he was not consulted with. Is that correct? Yes, Your Honor. The affidavit was put in on appeal or was put in before the trial court? It was on a post-conviction proceeding. It was put in a Rule 32 post-conviction proceeding. All right. And the State trial court. It was about two years later, as I understand it. That's correct. The State trial court determined that the factual determination was improper. The appellate court. The State appellate court. So there is no State factual finding because it's been determined improper by the State appellate court. Okay. The time has expired. Thank you, counsel. I should have noted for the record that Judge Gould is not present in the courtroom but that he will participate in the decision by listening to the case. Thank you. The case is disargued and submitted. The Court is now adjourned.
judges: Schroeder, Pregerson, Kozinski, O'scannlain, Rymer, Thomas, Silverman, Graber, Wardlaw, Gould, Paez, Berzon, Callahan, Bea, Ikuta, Cjj